LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
rapeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| JENNIFER REITMAN and CAROL SHOAFF, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CHAMPION PETFOODS USA, INC. and CHAMPION PETFOODS LP,<br><br>Defendants. | Case No. 2:18-CV-01736-DOC-JPR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THEIR THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 16(b)(4) AND 15(a)(2); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. David O. Carter<br>Ctrm: 9th Floor, 9D<br>Hearing Date:  April 22, 2019<br>Hearing Time: 8:30 a.m. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 22, 2019, at 8:30 a.m., or as soon as the matter may be heard, in the courtroom of the Honorable David O. Carter, Ronald Reagan Federal Building, United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701, 9th Floor, Courtroom 9D, Plaintiffs will and hereby do move the Court for leave to file a Third Amended Class Action Complaint pursuant to Fed. R. Civ. P. 16(b)(4) and 15(a)(2) of the Federal Rules of Civil Procedure (the "Motion").

This Motion was made following the conference of counsel pursuant to L.R. 7-3, which took place on March 20, 2019.  *See* Declaration of Rebecca A. Peterson in Support of Plaintiffs' Motion for Leave to File Their Third Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 16(b)(4) and 15(a)(2) ("Declaration of Rebecca A. Peterson").

This Motion is based upon this Notice of Motion, Memorandum of Points and Authorities, the Declaration of Rebecca A. Peterson in support thereof, the previous record on file herein, and such further evidence and argument as may be presented to the Court at or before the hearing.

Dated: March 25, 2019

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist (*pro hac vice*)
Rebecca A. Peterson (241858)
Krista K. Freier (*pro hac vice*)

*/s/ Rebecca Peterson*
REBECCA A. PETERSON

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:   (612) 339-0981
E-mail: rkshelquist@locklaw.com
          rapeterson@locklaw.com
          kkfreier@locklaw.com

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................. - 1 -

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................ - 5 -

III. ARGUMENT......................................................................... - 8 -

    A.   GOOD CAUSE PURSUANT TO RULE 16(b) EXISTS FOR AMENDING THE SCHEDULING ORDER ............................ - 9 -

    B.   THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE THIRD AMENDED COMPLAINT PURSUANT TO RULE 15(a)................................................................... - 10 -

        1.   The Allegations in the TAC Do Not Prejudice Defendants .................................................. - 11 -

        2.   Granting Leave to File the TAC Will Not Cause Undue Delay ................................................. - 13 -

        3.   Plaintiffs' Motion to Amend Is Brought In Good Faith, Is Not Futile, and Plaintiffs' Prior Amendments Are Irrelevant ........................... - 14 -

IV.  CONCLUSION ................................................................. - 15 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABM Indus., Inc. v. Zurich Am. Ins. Co.*,
  237 F.R.D. 225 (N.D. Cal. 2006) ......................................................... 13

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) ............................................................. 13

*Avedisian v. Mercedes-Benz, USA, LLC*,
  No. CV 12-00936 DMG, 2014 WL 12705054
  (C.D. Cal. Mar. 25, 2014) .................................................................. 14

*Bowles v. Reade*,
  198 F.3d 752 (9th Cir. 1999) ......................................................... 11, 14

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................. 9

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ............................................................. 10

*DeLodder v. Aerotek, Inc.*,
  No. CV 08-6044-CAS(AGRX), 2009 WL 1684409
  (C.D. Cal. June 15, 2009) .................................................................. 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................... 11

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
  654 F.3d 975 (9th Cir. 2011) ............................................................... 9

*Flores v. CVS Pharmacy, Inc.*,
  No. 2:07-CV-5326-FMC-EX, 2009 WL 10676277
  (C.D. Cal. Feb. 19, 2009) .................................................................. 15

*Foman v. Davis*,
  371 U.S. 178 (1962)...........................................................8, 9, 10, 11

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
  No. 1:15-cv-01489-AWI-BAM, 2018 WL 4027011
  (E.D. Cal. Aug. 21, 2018) .................................................................. 12

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ............................................................. 8, 9

*Lockheed Martin Corp. v. Network Sols. Inc.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................. 13

*McConnell v. Red Robin Int'l, Inc.*,
  No. C11-3026 WHA, 2012 WL 1357616 (N.D. Cal. Apr.17, 2012) .................... 12

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988), *implied overruling rec.*
   *by Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 15

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ....................................................................................... 8

*Owens v. Kaiser Foundation Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ..................................................................................... 4, 8

*Qualcomm, Inc. v. Motorola, Inc.*,
   989 F. Supp.1048 (S.D. Cal. 1997) ........................................................................... 10

*Talwar v. Creative Labs, Inc.*,
   No. CV 05-3375 FMC (AJWx), 2007 WL 1723609
   (C.D. Cal. June 14, 2006) ........................................................................................... 11

*True Health Chiropractic Inc. v. McKesson Corp.*,
   No. 13-CV-02219-JST, 2014 WL 2860318 (N.D. Cal. June 23, 2014) ................. 12

**Statutes**

California Civil Code §1750 *et seq.* ................................................................................... 5

California Business & Professions Code §17500 *et seq.* .................................................. 5

California Business & Professions Code §17200, *et seq.* .................................................. 5

**Other Authorities**

Fed. R. Civ. P. 30 ...................................................................................................... *passim*

Fed. R. Civ. P. 15 ...................................................................................................... *passim*

Fed. R. Civ. P. 16 ...................................................................................................... *passim*

L.R. 7-3 ........................................................................................................................ 1, 8

Plaintiffs Jennifer Reitman ("Plaintiff Reitman") and Carol Shoaff ("Plaintiff Shoaff") (together, "Plaintiffs"), by and through their counsel of record, hereby respectfully submit this motion to pursuant to subsection 4 of Rule 16(b) of the Federal Rules of Civil Procedure ("Rule 16(b)"), to amend the Court's Scheduling Order, and sub section 2 of Rule 15(a) of the Federal Rules of Civil Procedure ("Rule 15(a)"), to file a Third Amended Complaint ("TAC") to add additional factual allegations based on newly-discovered information and to add Erin Grant as a plaintiff. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place throughout various dates, but most recently on March 20, 2019.

# I.    INTRODUCTION

This is a consumer protection action brought by Plaintiffs on behalf of other similarly situated California residents who purchased dog food products (defined herein) sold by Champion Petfoods USA, Inc. and Champion Petfoods LP (together, "Defendants") for household or business use (not for resale) based on misleading advertising, marketing, packaging, and labeling of those products.

Plaintiffs sought Defendants' consent to amend their Second Amended Complaint ("SAC"), and Defendants refused. Plaintiffs respectfully now move to file the TAC to add (1) factual allegations based on newly-discovered information (so as to conform the existing pleading to the evidence adduced by Plaintiffs), and (2) an additional plaintiff, Erin Grant, who purchased Orijen Regional Red, Acana Heritage Red Meat (foods that contained or were at risk of containing the toxin pentobarbital, a barbiturate used to euthanize animals, that were not purchased by Plaintiffs Reitman and Schoaff) and Acana Regionals Grasslands with Grass-fed Kentucky Lamb, Freshwater Trout and Game Bird; Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats and Freshwater Catfish; Orijen Adult Dog Food; and Orijen Puppy Large Dry Dog Food.

As the Court is aware, Plaintiffs' current allegations arise from the presence of

- 1 -

heavy metals, BISPHENOL A ("BPA"), and (unspecified) toxins in Defendants' dog foods[1]. Plaintiffs also challenge specific statements and misrepresentations by Defendants of quality, as well as Defendants' failure to disclose harmful ingredients, including toxins, and to adequately select and monitor ingredient suppliers. Plaintiffs seek this amendment simply so they can conform the SAC to the evidence relating to those allegations. For example, Plaintiffs' TAC specifically lists Defendants' various misrepresentations: "Biologically Appropriate[TM]," "Fresh Regional Ingredients," "Delivered daily," "Never Outsourced," "Nourish as Nature Intended," "Delivering Nutrients Naturally," and "Made with Fresh and Natural Ingredients," and conforms the SAC to the evidence by adding allegations such as:

- While Defendants claim to use fresh and regional ingredients, they recently admitted moving from farmed fish to wild-caught fish which is not regional and may have lower levels of mercury;

- While Defendants have represented that its DogStar® Kitchens meet the European Union's standards for pet food, they do not meet the standards and have internally advised removal of that representation from the labels;

---

[1] These foods (herein referred to as the "Contaminated Dog Foods") include Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats & Freshwater Catfish; Acana Regionals Grasslands with Grass-Fed Kentucky Lamb, Freshwater Trout & Game Bird; Acana Regionals Meadowland with Free-Run Poultry, Freshwater Fish, and Nest-Laid Eggs; Acana Regionals Wild Atlantic with Wild New England Fish & Fresh Kentucky Greens; Orijen Original with Fresh Free-Run Chicken and Turkey, Wild-Caught Fish and Nest-Laid Eggs; Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney Lamb, Yorkshire Pork & Wild Mackerel; Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food; Orijen Six Fish with New England Mackerel, Herring, Flounder, Redfish, Monkfish and Silver Hake; Acana Singles Duck and Pear Formula Dry Dog Food; Acana Singles Lamb and Apple Formula Dry Dog Food; Acana Heritage Free-Run Poultry Formula Dry Dog Food; Acana Heritage Freshwater Fish Formula Dry Dog Food; Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead Trout Wet Dog Food; Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild Caught Fish, Eggs Wet Dog Food; Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Wet Dog Food; Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food; Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish Dry Dog Food; Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry Dog Food; Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food; Acana Singles Mackerel and Greens Formula Dry Dog Food; Acana Heritage Meats Formula Dry Dog Food; and Acana Singles Pork and Squash Formula Dry Dog Food. *See* ECF No. 99, ¶43.

- While Defendants issued a "White Paper" in defense of the Clean Label Project's heavy metal testing/findings, this White Paper was based on positive heavy metal testing results retained by Defendants from at least 2016 going forward. These testing results were never disclosed to consumers although Defendants received numerous consumer inquiries regarding heavy metal testing and/or the presence of heavy metals in the Contaminated Dog Foods and its ingredients over the years.

- Defendants had knowledge that there was a risk that pentobarbital (a barbiturate used to euthanize dogs, cats, and horses), was in pet food ingredients and/or that cross-contamination with ingredients that may include euthanized animals was possible, and in fact were aware that Evangers, a competitor pet food company, recalled food containing pentobarbital in 2017.

- While Defendants touted the quality of its ingredients, its testing procedures, and vetting of suppliers, Defendants do not actually test all of their ingredients or finished products for heavy metals, pentobarbital, toxins, BPA, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertisements, and statements.

- While Defendant touted the quality of its ingredient, its testing procedures, and vetting of suppliers, Defendants knew MOPAC, a third party supplier, accepted dead animals, yet Defendants did not properly audit yearly to ensure that Defendants' suppliers who purchased from MOPAC would not be at risk of cross-contamination with the accepted dead animals or ingredients containing pentobarbital. In fact, the one audit performed by Defendants noted that there was left over product on the machines between runs, and yet Defendants failed to stop using MOPAC as a supplier.

- On May 8, 2018, Defendants were notified they were sold beef tallow contaminated with pentobarbital by MOPAC. Three shipments of adulterated beef tallow were delivered by MOPAC and JBS (Defendants' supplier) to Defendants' DogStar® Kitchens and used to manufacture thousands of pounds of Defendants' Contaminated Dog Foods.

- Defendants did not report the incident to the FDA's Reportable Food Registry, nor did it notify consumers, initiate a recall, or inform customers that the included meals and tallow were manufactured by a company that accepts and utilized euthanized horses on its production line. Instead, Defendants knowingly, recklessly, and/or negligently continued allowing the sale of Contaminated Dog Foods containing pentobarbital.

- Defendants' own actions show that pentobarbital is a known risk. After the discovery of the contaminated beef tallow utilized by Defendants, Defendants admitted to the FDA that their failure to obtain a written agreement requiring MOPAC to identify the source of the beef tallow was an oversight that would be corrected. At or around the same time, MOPAC was instructed to inform the Pennsylvania Department of Agriculture when the rendering facility stopped accepting dead horses for processing.

- While Defendants tout that they source their ingredients regionally, in reality, Defendants source ingredients both internationally (e.g. China, New Zealand, India, France, Denmark, Ireland, Australia, and Canada) and across the United States (Idaho, Ohio, the Midwest, the West Coast, and the Northeast).

- While Defendants market the Contaminated Dog Foods as "Biologically Appropriate," using "Fresh Regional Ingredients" comprised of 100 percent meat, poultry, fish, and/or vegetables, both on the products' packaging and on Defendants' website, Defendants actually use frozen products (some of which have been stored for years) and store meals at their DogStar® Kitchens for several months prior to use.

- The risk of inclusion of pentobarbital in Defendants' foods renders any statement as to ingredients claimed to be "biologically appropriate" or providing natural or optimal nutrition or of premium quality as false.

- While Defendants have admitted all their formulations contain heavy metals, they have failed to update the packaging to reflect this admission.

- While Defendants claim the Contaminated Dog Foods are "Never Outsourced," Defendants in fact outsource the production of their meals. Moreover, Defendants have failed to inspect or visit the ingredient suppliers of certain meals to ensure that the quality and source of the ingredients match the representations made to consumers.

The TAC also requests specific injunctive relief (i) requiring full disclosure of all such substances and ingredients in Defendants' marketing, advertising, and labeling; (ii) prohibiting the utilization of the term "Fresh Regional Ingredients" and also suppliers who are street renderers or rendering facilities that accept euthanized animals; (iii) requiring testing of all ingredients and final products for such substances; and (iv) restoring monies to the members of the proposed Class.[2]

    As explained below, good cause exists to grant this motion under Rule 16(b)(4) as well as the extremely liberal standards of Rule 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2) (stating, "The court should freely give leave [to amend] when justice so requires."); *see also Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). The New Allegations would allow Plaintiffs to conform the operative pleadings to the evidence and provide specific factual details that will be relevant in upcoming briefing, including class certification and motions for summary judgment.

---

[2] All of the new allegations in the TAC are referred to collectively as the "New Allegations."

- 4 -

This evidence is probative of Defendants' liability. Further, Defendants cannot claim any unfair prejudice as a result of the proposed amendment because they have been on notice of this amendment and are defending against exact allegations in the cases filed in other jurisdictions (and the parties stipulated that all discovery is shared among all cases). Finally, the proposed amendment will result in a more comprehensive complaint based on additional factual background and allow the record to be set and clear for the upcoming dispositive motion practice and class certification. Accordingly, the Court should grant Plaintiffs' motion.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs initially filed this action on March 1, 2018, asserting state law claims on behalf of the class for: (1) California's Consumer Legal Remedies Act, California Civil Code §1750 *et seq.*; (2) California False Advertising Law, California Business & Professions Code §17500 *et seq.*; (3) California Unfair Competition Law, California Business & Professions Code §17200, *et seq.*; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) fraudulent misrepresentation; (7) fraud by omission; (8) negligent misrepresentation; and (9) unjust enrichment. Plaintiffs subsequently filed their first Amended Complaint ("FAC") on April 19, 2018. Plaintiffs allege that Defendants knowingly, recklessly, and/or negligently misrepresent and fail to fully disclose the presence of heavy metals and chemicals in their pet food sold under the brand names of ACANA and ORIJEN. FAC, ¶¶1, 6. Specifically, Defendants' misleadingly advertise, market, package, and label the Contaminated Dog Foods as natural, superior quality, healthy, and safe for consumption, without disclosing that the foods contained levels of arsenic, mercury, lead, cadmium, and/or BPA, which are known to pose health risks to humans and animals, including dogs. *Id.*, ¶¶49, 54-63. As a result of Defendants' omissions and misrepresentations, reasonable consumers purchased the Contaminated Dog Foods at a significant premium when in fact they would not have bought it at all if the true

quality and nature were disclosed. *Id.*, ¶49. Plaintiffs allege that they paid a premium for the Contaminated Dog Foods and the foods have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals, and toxins. *Id.*

Defendants moved to dismiss the FAC on May 24, 2018, *see* ECF No. 49, and on October 10, 2018, the Court granted the motion to dismiss in part, dismissing the claims of the nonresident plaintiffs only (the "October 10 Order"). *See* ECF. No. 98; *see also* ECF No. 97. In accordance with the Court's October 10 Order, Plaintiffs filed their Second Amended Complaint ("SAC") on October 16, 2018, which eliminated the named nonresident plaintiffs and limited their purported class to include "All persons who are citizens of the State of California who, from July 1, 2013, to the present, purchased the [pet foods] for household or business use, and not for resale." SAC, ¶82. As a result of Plaintiffs' filing, Defendants filed a renewed motion to dismiss on October 30, 2018, seeking to dismiss all claims in the SAC for failure to state a plausible claim of relief. ECF No. 100. On February 6, 2019, this Court denied the motion to dismiss. ECF No. 133.

Meanwhile, in their ongoing review of over two million pages of documents, Plaintiffs discovered evidence that bolsters the allegations (already asserted against Defendants) of misrepresentation of quality, failure to disclose harmful ingredients, and failure to adequately select and monitor ingredient suppliers. Peterson Decl., ¶9. Plaintiffs also discovered that beef fat in Defendants' ACANA and ORIJEN pet food formula tested positive for pentobarbital. [3] *Id.*

---

[3] Per the Food and Drug Administration's website, "Pets that eat pet food containing pentobarbital can experience drowsiness, dizziness, excitement, loss of balance, nausea, nystagmus . . . and inability to stand. Consuming high levels of pentobarbital can cause coma and death." *See* FDA Alerts Pet Owners About Potential Pentobarbital Contamination in Canned Dog Food Manufactured by The J.M. Smucker Company, Including Certain Gravy Train, Kibbles 'N Bits, Ol' Roy, and Skippy Products, FDA (Feb. 16, 2018), https://www.fda.gov/animalveterinary/newsevents/ucm597135.htm.

At the time Plaintiffs learned of the inclusion of pentobarbital in Defendants' pet food, Plaintiffs were in the process of filing separate actions in other jurisdictions per the Court's October 10 Order. Plaintiffs gave notice to Defendants that they were including allegations relating to the inclusion of pentobarbital in these complaints, and Defendants agreed that the complaints need not be filed under seal. Peterson Decl., ¶11. Accordingly, Plaintiffs publicly filed complaints in Wisconsin and amended the complaints filed in other actions. *See Weaver v. Champion Petfoods USA, Inc.*, No. 2:18-CV-01996 (E.D. Wis. Dec. 18, 2018), ECF No. 1; *Zarinebaf v. Champion Petfoods USA, Inc.*, No. 1:18-CV-06951 (N.D. Ill. Nov. 12, 2018), ECF No. 19; *Jerding v. Champion Petfoods USA, Inc.*, No. 1:18-CV-02756-MEH (D. Colo. Nov. 12, 2018), ECF No. 6; *Rydman v. Champion Petfoods USA, Inc.*, No. 2:18-CV-01578-RSM (W.D. Wash. Nov. 14, 2018), ECF No. 8; *Song v. Champion Petfoods USA, Inc.*, No. 0:18-CV-03205-PJS-KMM (D. Minn. Nov. 30, 2018), ECF No. 9 (collectively, the "Related Actions"). Plaintiffs did not immediately amend the SAC because they were awaiting the Court's Order on the then-pending Motion to Dismiss, and Ms. Grant had not yet retained Plaintiffs' counsel. Peterson Decl., ¶¶10, 18.

The parties had previously agreed that discovery would be coordinated among all of the matters and that the documents produced by Defendants and the depositions taken by Plaintiffs would apply to all cases. *Id.*, ¶13. At the time Plaintiffs discovered evidence related to the New Allegations, the parties were in the process of preparing for depositions that were to (and did) take place between November 27, 2018, and December 7, 2018. *Id.*, ¶14. In fact, the parties stipulated that witnesses designated pursuant to Fed. R. Civ. P. 30(b)(6) would not be questioned on the pentobarbital issue, but the topic could be discussed in their capacity as Fed. R. Civ. P. 30(b)(1)

witnesses. *Id.*, ¶15.[4]  The parties further stipulated that witnesses designated per Fed. R. Civ. P. 30(b)(6) on the pentobarbital topic would be deposed at a later date. *Id.*, ¶16. Currently, these Rule 30(b)(6) depositions are scheduled for April 3, 2019, and April 16, 2019. *Id.*

Once the Court denied Defendants' Motion to Dismiss the SAC (on February 6, 2019), Plaintiffs (in accordance with L.R. 7-3), met and conferred with Defendants regarding the proposed modifications to the SAC and requested that Defendants stipulate to the amendment in this action. *Id.*, ¶17. These meet and confers took place over various dates, but most recently on March 20, 2019. *Id.* Defendants have notified Plaintiffs that they would not stipulate to the amendment despite the fact that these same allegations are contained in pleadings in the Related Actions. *Id.*

## III.   ARGUMENT

A party seeking leave to amend pleadings after the deadline specified in the scheduling order must first satisfy Rule 16(b)'s "good cause" standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). Rule 16(b)(4) states that a "schedule may be modified only for good cause and with the judge's consent." If good cause exists, the party must next satisfy Rule 15(a). *Johnson*, 975 F.2d 608. Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely "given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, the United States Supreme Court made clear that this mandate is to be heeded. 371 U.S. 178, 182 (1962). The U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") has held that this policy is "to be applied with extreme liberality." *Owens*, 244 F.3d at 712 (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). The Court in *Foman* stated that a plaintiff's claim should be tested on the merits instead of technicalities, and therefore, a plaintiff should be

---

[4] And, in fact, several witnesses did testify regarding the pentobarbital issue in that capacity. *Id.*

granted leave to amend absent deficient conduct by the plaintiff. *Foman*, 371 U.S. at 182. Leave should only be denied where the amendment of the complaint would cause the opposing party (1) undue prejudice, (2) is sought in bad faith, (3) constitutes an exercise in futility, or (4) creates undue delay. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

## A.   GOOD CAUSE PURSUANT TO RULE 16(b) EXISTS FOR AMENDING THE SCHEDULING ORDER

Plaintiffs seek to amend the complaint to bolster the allegations (already asserted against Defendants) of misrepresentation of quality, failure to disclose harmful ingredients, and failure to adequately select and monitor ingredient suppliers and to add a new plaintiff who has standing to pursue these claims[5]. Plaintiffs respectfully submit that there is good cause for amendment of the Court's scheduling order. Rule 16(b)'s good cause standard focuses primarily on the diligence of the moving party, and that party's reasons for seeking modification. *See Johnson*, 975 F.2d at 609; *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). Per the Court's Order Setting the Scheduling Conference, any motion to amend the pleading was due on or before October 14, 2018, for hearing by November 13, 2018 (within 90 days of the Scheduling Order). ECF No. 85 at 2. Plaintiffs brought this motion as expeditiously as possible based on the progression of the proceedings, the ongoing examination of over two million pages of discovery documents, and after having taken 16 depositions between November 26, 2108 and December 7, 2108, and having been retained by Ms. Grant on March 6, 2019. *See* Peterson Decl., ¶8.

Further, all documentation and information related to the evidence relevant to the new allegations contained in the TAC, including those related to pentobarbital,

---

[5] Ms. Grant purchased foods containing or at risk of containing pentobarbital during the relevant time period.

- 9 -

were uniquely in Defendants' possession until it was recently turned over in discovery. Finally, as stated above, immediately after Plaintiffs learned of the New Allegations, Plaintiffs made Defendants aware of their intention to file (and did file) pleadings in the Related Actions containing the New Allegations. *Id.*, ¶¶11-12. Plaintiffs continue to move expeditiously given discovery on some of these issues is ongoing (in fact, Rule 30(b)(6) depositions related to pentobarbital are taking place on April 3, 2019, and April 16, 2019). *Id.*, ¶16.

As such, Plaintiffs respectfully submit that there is good cause to modify the scheduling order to allow the instant amendment and have not unduly delayed the instant motion to amend. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (finding no bad faith and affirming grant of leave to amend where plaintiff sought to develop evidence of wrongful conduct before asserting claims); *Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp.1048, 1050 (S.D. Cal. 1997) (finding no undue delay where the plaintiff's ongoing investigation and discovery had revealed sufficient information upon which to base new claims for relief). Therefore, the court should amend the scheduling order to permit Plaintiffs to file their TAC.

### B.   THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE THIRD AMENDED COMPLAINT PURSUANT TO RULE 15(a)

Rule 15(a) governs amendments to pleadings. The rule encourages courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman*, the Supreme Court explained that Rule 15's objective is to give a plaintiff "an opportunity to test his claim on the merits." 371 U.S. at 182. When deciding whether to grant leave to amend, a court must consider: (1) whether the amendment was filed with undue delay; (2) whether the movant has requested the amendment in bad faith or as a dilatory tactic; (3) whether movant was allowed to make previous amendments which failed to correct deficiencies of the complaint; (4) whether the amendment will unduly prejudice the opposing party and; (5) whether the amendment

is futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (*citing Foman*, 371 U.S. at 182).

### 1.    The Allegations in the TAC Do Not Prejudice Defendants

The allegations added to the TAC do not prejudice Defendants. Of the five *Foman* factors, prejudice is the most important factor and is given the most weight. *Eminence Capital,* 316 F.3d at 1052. Therefore, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.*; *see also Talwar v. Creative Labs, Inc.,* No. CV 05-3375 FMC (AJWx), 2007 WL 1723609 (C.D. Cal. June 14, 2006) (finding the plaintiffs should be granted leave to amend because additional discovery would not unduly prejudice the defendant and the defendant did not make a strong enough showing of bad faith on the part of the plaintiffs or that the plaintiffs' requested leave to amend was a dilatory tactic, despite the suspect timing of the filing). Defendants bear the burden of establishing that prejudice will result from Plaintiffs' amendment. *See Eminence Capital*, 316 F.3d at 1052.

The Ninth Circuit has also held that satisfaction of one of the five *Foman* factors alone is insufficient to justify the denial of a request for leave to amend. *See Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999) (finding that undue delay alone "is insufficient to justify denying a motion to amend" and reversing "denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment").

Here, Plaintiffs' amendment will not prejudice Defendants at all. First, as stated above, Defendants have been on notice of the proposed amendment and discovery related to same is ongoing. Expert discovery is scheduled to close on May 31, 2019, and the class certification hearing (indisputably the most pivotal motion practice in a class action) is scheduled for August 5, 2019. ECF No. 85. Further, the trial is not

scheduled until October 29, 2019. *Id.* Finally, the proposed new plaintiff, Ms. Grant, retained Plaintiffs' counsel to represent her on March 6, 2019, and has made herself available for deposition. Peterson Decl., ¶18. The underlying claims at issue will not change as a result of adding Ms. Grant as she does not seek to add new causes of action. As such, Defendants will suffer no recognized prejudice by the proposed amendment. *See, e.g., Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, No. 1:15-cv-01489-AWI-BAM, 2018 WL 4027011, at *4 (E.D. Cal. Aug. 21, 2018) (no prejudice where new plaintiff "does not seek to assert any claims beyond those that are included in the original complaint" and defendant's "opposition to the motion for class certification is not due for another nine weeks."); *McConnell v. Red Robin Int'l, Inc.*, No. C11-3026 WHA, 2012 WL 1357616, at *2 (N.D. Cal. Apr.17, 2012) ("This Court is not convinced that the addition of one named class plaintiff, four months before non-expert discovery ends, six months before the deadline for dispositive motions occurs, and nine months before trial is set to begin, will result in the sort of undue prejudice defendant contends is likely to occur."); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-02219-JST, 2014 WL 2860318, at *3 (N.D. Cal. June 23, 2014) (finding no prejudice where the new plaintiff was already a class member as is true here).

Moreover, in determining whether plaintiff's proposed amendments to the complaint satisfy Rule 15(a), the "principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *DeLodder v. Aerotek, Inc.*, No. CV 08-6044-CAS(AGRX), 2009 WL 1684409, at *5 (C.D. Cal. June 15, 2009) (citation omitted). Here, the "general fact situation" involves the misleading labeling, packaging, and marketing of Defendants' pet food products as safe and natural without disclosing various harmful ingredients and adequately selecting and monitoring ingredients sources and suppliers. The New Allegations simply bolster

existing allegations in the SAC, and Defendants have been made aware by Plaintiffs' two previous complaints of the **general** fact situation of undisclosed ingredients, chemicals, and toxins. Pentobarbital is simply an additional "toxin" and thus, that allegation (and other New Allegations) all go to the general fact situation of the SAC. Therefore, Defendants have been given adequate notice. *See ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225, 227 (N.D. Cal. 2006) (holding that defendants were not prejudiced by amendment because litigation was at an early stage, and defendants were not surprised by the new factual allegations). Thus, Defendants cannot seriously argue undue prejudice here.

### 2. Granting Leave to File the TAC Will Not Cause Undue Delay

Plaintiffs are promptly seeking to amend the complaint after discovering additional facts to support their claims. Permitting amendment will not cause any delay to this case. The facts here do not come close to those where the Ninth Circuit has found that a long delay justified denying a motion for leave to amend. *See e.g. AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (concluding that the district court did not abuse its discretion when denying the motion for leave to amend because fifteen months had passed between discovery of a fact and a motion for leave to amend, and plaintiff asserted a "drastically" new theory of liability); *Lockheed Martin Corp. v. Network Sols. Inc.,* 194 F.3d 980, 986 (9th Cir. 1999) (affirming lower court's denial of a motion for leave to amend because it was filed several months after the deadline with no reason given for the delay). In the present matter, while five months have passed since the deadline for amending pleadings, during those five months, Plaintiffs have taken 16 depositions, continue to review documents among the two million pages produced by Defendants, learned of the test results showing the presence of pentobarbital in Defendants' pet food, communicated their intention to amend all the complaints filed in all jurisdictions, scheduled Fed. R. Civ. P. 30(b)(6) depositions on the pentobarbital issue for April 3,

2019, and April 16, 2019, and were retained by Ms. Grant. Further, Plaintiffs rightfully waited to file the instant motion until the Court had an opportunity to rule on the Defendants' Motion to Dismiss (February 6, 2019).

Therefore, the undue delay factor militates in Plaintiffs' favor.[6]  *See Avedisian v. Mercedes-Benz, USA, LLC*, No. CV 12-00936 DMG (CWx), 2014 WL 12705054, at *3 (C.D. Cal. Mar. 25, 2014) (finding no undue delay despite the nearly four-month delay in filing the motion for leave to amend after the deadline passed because the litigation was still in the discovery stage and the deadlines for non-expert discovery and trial deadlines were months away).

### 3.   Plaintiffs' Motion to Amend Is Brought In Good Faith, Is Not Futile, and Plaintiffs' Prior Amendments Are Irrelevant

Plaintiffs' motion for leave to file the TAC is brought in good faith. The addition of factual allegations based on newly-discovered information that conform to the evidence in this case will result in a more comprehensive complaint and allow the record to be set and clear for the upcoming dispositive motion practice and class certification. As discussed above, Plaintiffs seek to amend the complaint to bolster allegations of the misleading advertisement, marketing, packaging, and labeling of Defendants' pet food products, including the risk of the specific toxin pentobarbital. As stated, Defendants were on notice and Plaintiffs moved expeditiously. Therefore, there is no basis for asserting that Plaintiffs' request for leave to amend is made in bad faith or for dilatory reasons.

Moreover, there is no reason to believe that Plaintiffs' amendment to conform to the proof obtained in discovery would be futile. "[A]s the Ninth Circuit has explained, 'a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or

---

[6] Since "[u]ndue delay by itself ... is insufficient to justify denying a motion to amend," and Plaintiffs offer a reasonable explanation as why they are filing the instant motion at this time, Defendants cannot show that the motion should be denied. *See Bowles*, 198 F.3d at 758.

defense.'" *Flores v. CVS Pharmacy, Inc.*, No. 2:07-CV-5326-FMC-EX, 2009 WL 10676277, at *2 (C.D. Cal. Feb. 19, 2009) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)*, implied overruling rec. by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The testing results that revealed the presence of pentobarbital, a substance for which there is ***no*** safe or acceptable level (even according to Defendants), alone negates such a possibility.

Finally, as set forth above, the TAC merely proposes adding facts that will further support claims that have already survived Defendants' motion to dismiss. Thus, Plaintiffs' prior amendment is irrelevant given that Plaintiffs are not trying to cure any deficiencies in the SAC through the filing of the TAC but rather reinforce existing claims that have already survived. Accordingly, the Court should grant Plaintiffs' motion.

## IV.   CONCLUSION

For the reasons set forth above, it is respectfully submitted that Plaintiffs' motion for leave to file and serve a TAC should be granted.

Dated: March 25, 2019

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (*pro hac vice*)
REBECCA A. PETERSON (241858)
KRISTA K. FREIER (*pro hac vice*)

*s/Rebecca A. Peterson*
REBECCA A. PETERSON

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981
E-mail: rkshelquist@locklaw.com
          rapeterson@locklaw.com
          kkfreier@locklaw.com

ROBBINS ARROYO LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
5040 Shoreham Place
San Diego, CA 92122
Telephone:  (619) 525-3990
Facsimile:   (619) 525-3991
E-mail: kseely@robbinsarroyo.com
          smckany@robbinsarroyo.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
KARLA M. GLUEK
RAINA C. BORRELLI (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:   (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
          kgluek@gustafsongluek.com
          rborrelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
BRENDAN S. THOMPSON (*pro hac vice*)
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone:  202-789-3960
Facsimile:   202-789-1813
E-mail: kvandyck@cuneolaw.com
          charlesl@cuneolaw.com
          brendant@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail: jdepalma@litedepalma.com
          scruzhodge@litedepalma.com

LITE DEPALMA GREENBERG, LLC
STEVEN J. GREENFOGEL (*pro hac vice*)
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone:  (267) 519-8306
Facsimile:   (973) 623-0858
E-mail : sgreenfogel@litedepalma.com

- 16 -

ANDREWS DEVALERIO LLP
Daryl D. Andrews (*pro hac vice*)
265 Franklin St., Suite 1702
Boston, MA 02110
Telephone:  (617) 936-2796
E-mail: daryl@andrewsdevalerio.com

POMERANTZ LLP
Samuel J. Adams (*pro hac vice*)
Gustavo F. Bruckner Adams (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
E-mail: sjadams@pomlaw.com
          gfbruckner@pomlaw.com

STEPHENS & STEPHENS LLP
Conrad B. Stephens
505 South McClelland Street
Santa Maria, CA 93454
Telephone:  (805) 922-1951
Facsimile:  (805) 922-8013
E-mail: conrad@stephensfirm.com

**Attorneys for Plaintiffs**