LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
rapeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **JENNIFER REITMAN, ERIN GRANT,** and **CAROL SHOAFF,** individually and on behalf of a class of similarly situated individuals,<br><br>**PLAINTIFFS**,<br><br>V.<br><br>**CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP**,<br><br>**DEFENDANTS**. | Case No. 2:18-cv-01736-DOC-JPR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT WITNESS DR. LORIN M. HITT PURSUANT TO FEDERAL RULES OF EVIDENCE 702 AND 403; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. David O. Carter<br>Ctrm: 9th Floor, 9D<br>Hearing Date: January 13, 2020<br>Hearing Time: 8:30 a.m. |

**PLEASE TAKE NOTICE THAT** on January 13, 2020, at 8:30 a.m., or as soon as thereafter as the matter may be heard by the Honorable David O. Carter in Courtroom 9D of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiffs Jennifer Reitman, Erin Grant and Carol Shoaff ("Plaintiffs"), by their undersigned attorneys, on behalf of themselves and all other similarly situated, will and hereby move the Court to enter an Order, pursuant to Fed. R. Evid. 702 and 403 and *Daubert v. Merrell Dow Chemicals, Inc.*, 509 U.S. 579 (1993), excluding the expert opinions of Defendants Champion Petfoods USA, Inc.'s and Champion Petfoods LP's (together, "CPF") expert, Dr. Lorin M. Hitt.

This Motion is based upon the attached Memorandum of Points and Authorities, the Declaration of Rebecca A. Peterson in support of this Motion and the exhibits thereto, and the record in this matter.

### NOTICE OF COMPLIANCE WITH MEET AND CONFER ORDER

This Motion is made following the conferences of counsel, pursuant to Local Rule 7-3. Such conferences took place via telephone on October 3, 2019, and in-person at the offices of Plaintiffs' counsel, Lockridge Grindal Nauen P.L.L.P. in Minneapolis, Minnesota on September 9, 2019, from approximately 12:30 p.m. to 3:30 p.m. Present at the in-person conference were attorneys Rebecca Peterson and Raina Borrelli, counsel for Plaintiffs, and attorneys David A. Coulson and Derek J. Waterstreet, counsel for CPF.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 1

I.    ARGUMENT ......................................................................................................... 3

    A.    The *Daubert* and FRE 702 Standard .................................................. 3

    B.    Dr. Hitt Is Not Qualified to Opine on Dr. Krosnick's Survey ........................ 5

    C.    Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Speculative, Unreliable, and Based on Insufficient Facts ..................................................... 8

    D.    Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Duplicative of Dr. Hanssens's Opinions ................................................................. 10

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**                                           **PAGE(S)**

*Ardestani v. BMW of N. Am., LLC*,
  2018 WL 6016956 (C.D. Cal. Oct. 15, 2018) ............................................................ 5

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011) ....................................................................... 8

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
  2010 WL 1687883 (N.D. Ill. Apr. 26, 2010) .......................................................... 6, 7

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
  923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...................................................................... 8

*Daubert v. Merrell Dow Chemicals, Inc.*,
  509 U.S. 579 (1993) ..........................................................................................*passim*

*Gable v. Nat'l Broad. Co.*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l
  Broad. Co., Inc.*, 438 F. App'x 587 (9th Cir. 2011) .............................................. 4, 6

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................ 4, 5

*Greenawalt v. Sun City W. Fire Dist.*,
  23 F. App'x 650 (9th Cir. 2001) ................................................................................ 8

*Griffo v. Oculus VR, Inc.*,
  2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) ......................................................... 4

*Guido v. L'Oreal USA, Inc.*,
  2014 WL 6603730 (C.D. Cal. July 24, 2014) .......................................................... 7

*Guidroz-Brault v. Mo. Pac. R. R. Co.*,
  254 F.3d 825 (9th Cir. 2001) ................................................................................ 8, 10

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  382 F. Supp. 3d 687 (E.D. Mich. 2019) .................................................................... 7

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................................. 4, 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) .......................................................................................... 4, 5

*M2 Software, Inc. v. Madacy Entm't*,
    2003 WL 25667611 (C.D. Cal. Jan. 3, 2003) ............................................................ 8

*Murray v. S. Route Mar. SA*,
    870 F.3d 915 (9th Cir. 2017) ..................................................................................... 5

*Newport Corp. v. Lighthouse Photonics Inc.*,
    2014 WL 1370749 (C.D. Cal. Apr. 8, 2014) (Carter, J.) ........................................... 3

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ..................................................................................... 5

*Skydive Arizona, Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) ................................................................................... 7

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
    648 F. App'x 609 (9th Cir. 2016) .............................................................................. 7

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017), *cert. denied sub nom. Teva Pharm.*
    *USA, Inc. v. Wendell*, 138 S. Ct. 1283 (2018) ................................................... 3, 4, 5

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. Evid. 702 ............................................................................................. *passim*

Fed. R. Civ. Evid. 403 ............................................................................................. *passim*

Shari Seidman Diamond, *Reference Guide on Survey Research*, in Federal
    Judicial Center, REFERENCE MANUAL ON SCIENTIFIC
    EVIDENCE (2d ed. 2000) ........................................................................................ 6

# INTRODUCTION

When reviewing expert evidence, the Court must act as a gatekeeper to prohibit irrelevant and unreliable expert opinions. CPF's[1] expert, Dr. Lorin M. Hitt, admitted he is not an expert in survey design, yet he offers a number of opinions critiquing Plaintiffs' survey expert, Dr. Jon A. Krosnick's, diminution in value survey ("Damages Survey") design, methodology, and analysis. Such an unsupported opinion cannot be permitted under Federal Rules of Evidence ("FRE") 702 or 304 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 5090.5 579 (1993) ("Daubert"). Plaintiffs move to exclude Dr. Hitt's opinions regarding Dr. Krosnick's Damages Survey.

# FACTUAL BACKGROUND

CPF manufactured, marketed and sold Dog Food claiming that it was biologically appropriate, made with fresh regional ingredients, never outsourced, and natural even though it has a risk of containing heavy metals, BPA, and pentobarbital as well as non-fresh and non-regional ingredients. As part of their evidence on class-wide damages, Plaintiffs offered the expert opinions of Dr. Krosnick and Mr. Colin Weir, who found price premium damages exist on a class-wide basis under Plaintiffs' theory of liability. To determine a percent diminution in value associated with CPF's misrepresentations about its Dog Food, Dr. Krosnick designed and conducted a survey of nearly 7,000 U.S. consumers. Using the data from that Damages Survey, he calculated a diminution in value associated with the misrepresentations, which Mr. Weir then applied to CPF's sales data to determine class damages.

CPF offers the opinions of Dr. Hitt to rebut the opinions of Plaintiffs' experts Dr. Krosnick and Mr. Weir. Ex. 1, ¶¶1-4, 14. Dr. Hitt has an undergraduate degree in electrical engineering and a Ph.D. in management, in which he focused his coursework in economics

---

[1] "CPF" refers to Champion Petfoods USA, Inc. and Champion Petfoods LP. "Dog Food" is identified in Paragraphs 6 and 62 of the Third Amended Complaint ("TAC"), ECF No. 157. Unless otherwise noted, references to "Ex. __" are exhibits to the Declaration of Rebecca A. Peterson in support of this motion.

and statistics. *Id.* at ¶2. He teaches courses on competition and customer pricing as well as economics of technology at the University of Pennsylvania and the Massachusetts Institute of Technology. *Id.* at ¶¶1-4. His current research focuses "on the economics of information and economics of information technology," which is "the study of the impact of information on consumers, organizations and markets and the role of technology in influencing that." Deposition of Lorin M. Hitt, Ph. D. ("Hitt Dep.") 7:12-20 (May 30, 2019), ECF 194-1.

  Dr. Hitt admitted in his deposition that he has never designed or conducted a survey related to the market value attributable to certain aspects of consumer products. *Id.* at 12:9-12. He does not typically use surveys in his own work and has only designed between five and ten surveys throughout his career. *Id.* at 8:3-11, 11:10-13. Each of those five to ten surveys was conducted at large corporations to investigate business practice—none of them were related to consumer products in any way. *Id.* at 11:25-12:12. Specifically, Dr. Hitt has never designed a choice-based conjoint study and this survey methodology is "not something [he] would normally use in [his] own work." *Id.* at 18:10-14, 18:25-19:4. He has also never conducted any research in survey design, nor has he designed a survey as part of his litigation-related work. *Id.* at 32:3-6, 34:6-9. Presumably because of his lack of experience and expertise in survey design and analysis, Dr. Hitt was not retained by CPF to critique Dr. Krosnick's Damages Survey—that role was filled by CPF's expert Dr. Dominique M. Hanssens. *Id.* at 7:2-9.

  Nevertheless, Dr. Hitt offers a number of opinions about Dr. Krosnick's survey design and methodology and his analysis of the survey data. First, Dr. Hitt opines that Dr. Krosnick's Damages Survey, due to its design and analysis of the survey data, measures willingness to pay rather than market value, and is thus unrelated to Plaintiffs' theory of harm. Ex. 1, ¶¶30-37 ("the use of a willingness-to-pay measure by Dr. Krosnick and Mr. Weir likely leads to an overestimate of damages even if willingness to pay were correctly measured"). Second, Dr. Hitt opines that Dr. Krosnick's Damages Survey design is not an established methodology for estimating the effect of a change in a product attribute on

consumer demand. *Id.* at ¶¶39-42. Specifically, he states that Dr. Krosnick's Damages Survey design, which involved showing respondents the complete packaging for one of two kinds of CPF Dog Food and then showing some respondents corrective information to remedy CPF's misrepresentations, is not a "standard, well-accepted approach to demand estimation for retail consumer products." *Id.* at ¶41. Third, Dr. Hitt opines that Dr. Krosnick's Damages Survey design "has no resemblance to the actual retail environment that consumers face when making purchasing decisions," and thus is not reliable. *Id.* at ¶¶43-48. Fourth, Dr. Hitt purports to analyze Dr. Krosnick's survey data and finds that Dr. Krosnick's percent decrease in value is not statistically significant across all relevant products. *Id.* at ¶¶49-54. Lastly, Dr. Hitt opines that Dr. Krosnick's survey design did not properly take supply-side factors into consideration because holding the quantity sold fixed as a matter of history and using manufacturer's suggested retail prices in the survey does not mirror all supply side factors. *Id.* at ¶¶61-73.

Dr. Hitt is not qualified to offer any of these opinions given his lack of education, training, or experience in survey design, methodology, and analysis. Moreover, Dr. Hitt did no independent work to support the sweeping generalizations he makes regarding Dr. Krosnick's survey. Finally, his opinions are duplicative of CPF's survey expert, Dr. Hanssens. Dr. Hitt's opinions regarding Dr. Krosnick's survey should be excluded under FRE 702 and 403.

I.     **ARGUMENT**

     A.     **The *Daubert* and FRE 702 Standard**

FRE 702 and *Daubert* govern the admissibility of expert testimony. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017), *cert. denied sub nom. Teva Pharm. USA, Inc. v. Wendell*, 138 S. Ct. 1283 (2018); *Newport Corp. v. Lighthouse Photonics Inc.*, 2014 WL 1370749, at *1 (C.D. Cal. Apr. 8, 2014) (Carter, J.). FRE 702 permits the admission of expert opinion testimony if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," if the "testimony is based on sufficient facts or data," if "the testimony is

the product of reliable principles and methods," and if "the expert has reliably applied the principles and methods to the facts of the case." *Wendell*, 858 F.3d at 1232 (quoting Fed. R. Evid. 702). District courts are obligated to act as a "gatekeeper" to ensure that the expert testimony is both reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Daubert*, 509 U.S. at 589; *see also Griffo v. Oculus VR, Inc.*, 2018 WL 6265067, at *5 (C.D. Cal. Sept. 18, 2018) (holding that the district court "serves a special 'gatekeeping' function with respect to expert testimony").[2] In performing its gatekeeper role, the Court should examine "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Id.*

Rule 702 permits expert opinions where the expert is qualified by "knowledge, skill, experience, training, or education," and "such qualifications are construed broadly." *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004). "Thus, to determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co., Inc.*, 438 F. App'x 587 (9th Cir. 2011).

To determine reliability, the proponent must show that the expert's testimony is based on "sufficient facts or data" and that it is "the product of reliable principles and methods." Fed. R. Evid. 702. The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147-49. Expert testimony cannot be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). A determination of reliability is "a malleable one tied to the facts of each case" and district

---

[2] Here, as throughout, all emphasis is deemed added and citations and footnotes are omitted unless otherwise noted.

courts have "'broad latitude' to 'decid[e] *how* to test an expert's reliability' and '**whether or not** [an] expert's relevant testimony is reliable.'" *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922-23 (9th Cir. 2017) (quoting *Kumho Tire*, 526 U.S. at 152-53) (emphasis and alteration in original). Factors the Court should consider include "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; … whether the known or potential rate of error is acceptable … [and] whether experts are testifying about matters growing naturally out of their own independent research, or if they have developed their opinions expressly for purposes of testifying." *Wendell*, 858 F.3d at 1232 (internal quotation marks omitted).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Ardestani v. BMW of N. Am., LLC*, 2018 WL 6016956, at *6 (C.D. Cal. Oct. 15, 2018) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). To determine relevance, the proponent must show that the expert's "reasoning or methodology properly can be applied to the facts in issue" and the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 592-93; Fed. R. Evid. 702.

Thus, in evaluating a motion to exclude expert testimony under FRE 702 and *Daubert*, the district court considers whether the proffered expert (1) is qualified, (2) has employed a reliable methodology, (3) offers opinions that follow rationally from the application of the expert's methodology and qualifications, and (4) presents testimony that is relevant to the case at hand. *See Kumho Tire*, 526 U.S. at 151-54; *Gen. Elec. Co.*, 522 U.S. at 146; *Daubert*, 509 U.S. at 589-93; *Wendell*, 858 F.3d at 1232. Dr. Hitt's opinions regarding Dr. Krosnick's survey do not satisfy these considerations.

**B.     Dr. Hitt Is Not Qualified to Opine on Dr. Krosnick's Survey**

Dr. Hitt lacks the education, training, or experience required by FRE 702 for the admissibility of any opinions regarding the design and analysis of Dr. Krosnick's survey. His lack of experience weighs heavily against admitting the testimony about Dr. Krosnick's

survey that he offers in this case and instead renders his opinions unhelpful to the trier of fact.

Expert testimony is only permitted from qualified experts. Fed. R. Evid. 702; *In re Silicone Gel Breast Implants*, 318 F. Supp. 2d at 889. With respect to surveys, "education in psychology, marketing, and communication, or other related fields, may be pertinent." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 2010 WL 1687883, at *3 (N.D. Ill. Apr. 26, 2010) (citing Shari Seidman Diamond, *Reference Guide on Survey Research*, in Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 238 (2d ed. 2000)). "At the very least, the survey expert must understand 'survey methodology, including sampling, instrument design (questionnaire and interview construction), and statistical analysis.'" *Id.* (quoting Diamond, *supra*). This means that the opinion must be informed by the witness's expertise rather than simply an opinion offered by a purported expert. *Gable*, 727 F. Supp. 2d at 833.

CPF offers Dr. Hitt as an expert to rebut the opinions provided by Plaintiffs' survey expert, Dr. Krosnick. Dr. Krosnick determined the diminution in value associated with CPF's misrepresentations about the Dog Food using a scientifically designed and conducted consumer survey. *See generally* Ex. 2 (Krosnick April 8 Report). However, as set forth below, Dr. Hitt is admittedly not an expert in survey design, analysis, or methodology, and is thus not qualified under FRE 702 or *Daubert* to offer any opinions regarding Dr. Krosnick's survey.

Dr. Hitt's educational background is in electrical engineering and management. Ex. 1 at App. 1. His Ph.D. coursework focused on economics and statistics, and his teaching career focuses on competition and consumer pricing. *Id.* at ¶3. In his research, he studies "the impact of information on consumers, organizations and markets and the role of technology in influencing that." Hitt Dep. 7:12-20. None of Dr. Hitt's education or experience gives him expertise in the type of consumer product valuation survey conducted by Dr. Krosnick. His degrees are not in psychology, marketing, or communication, *see Bobak Sausage*, 2010 WL 1687883, at *3, and the survey work involved in his doctoral

dissertation were corporate surveys, which is far afield from the Damages Survey Dr. Krosnick conducted in this case. Hitt Dep. 11:14-12:4.

Similarly, Dr. Hitt's experience also does not provide him with the necessary qualifications to critique Dr. Krosnick's survey. In fact, Dr. Hitt admitted that he does not typically use surveys in his consumer behavior analysis work at all. *See id.* at 63:18-64:4. Tellingly, none of the mere five to ten surveys he has designed and conducted throughout his career relate to the valuation of a consumer product or attribute of a consumer product. *Id.* at 11:25-12:12. Furthermore, Dr. Hitt admitted that he has never designed or conducted a survey related to the market value attributable to certain aspects of consumer products. *Id.* at 12:9-12.

Despite his clear lack of education and experience in designing and conducting surveys to determine the value of a consumer product, or an attribute of a consumer product, Dr. Hitt opines that Dr. Krosnick's Damages Survey cannot validly determine the diminution in value associated with CPF's misrepresentations. *See generally* Ex. 1; Hitt Dep. 72:8-15 (testifying that he does not believe market price can be determined through survey methods alone in any situation) 93:12-23 (in the cases where he has served as an expert witness, Dr. Hitt has never found that a conjoint survey was an appropriate methodology to determine a diminution in value). This opinion, which he is not even qualified to offer, is contrary to decisions in this Court and others finding that consumer surveys are an appropriate methodology to determine diminution in value in false advertising cases. *See, e.g. Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016); *Guido v. L'Oreal USA, Inc.*, 2014 WL 6603730, at *5 (C.D. Cal. July 24, 2014). Because Dr. Hitt is admittedly not an expert in survey design and analysis, and admits that he was not retained to evaluate Dr. Krosnick's survey, his opinions as to Dr. Krosnick must be excluded. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 694 (E.D. Mich. 2019) (excluding the expert's opinions rebutting plaintiffs' conjoint survey where the expert admitted he was not an expert in conjoint analysis and had never

performed a conjoint analysis, and who also admitted at his deposition that he was not retained to estimate class damages at the point of sale); *see also M2 Software, Inc. v. Madacy Entm't*, 2003 WL 25667611, at *4 (C.D. Cal. Jan. 3, 2003) (finding survey expert unqualified because he had no formal training in consumer surveys and had never designed a consumer survey before).

Dr. Hitt does not meet the fundamental requirement under FRE 702 that he be qualified to opine on the design and analysis of a conjoint survey. Thus, he should be excluded from offering any such opinions.

### C. Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Speculative, Unreliable, and Based on Insufficient Facts

Expert testimony "may not include unsupported speculation and subjective beliefs." *Greenawalt v. Sun City W. Fire Dist.*, 23 F. App'x 650, 652 (9th Cir. 2001). Therefore, in order to meet the requirements of FRE 702 and *Daubert*, expert testimony "must relate to some form of specialized knowledge" and cannot rest simply on a purported expert's general opinion. *Id.*; *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001) (excluding the testimony of an expert who drew his conclusions from his own assumptions rather than applying his expertise to the available facts); *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1256 (S.D. Cal. 2013) (holding that an expert's testimony was inadmissible because he "could not identify the factual basis for his assumptions or provide any assurance that his conclusion is based upon a method that is generally accepted in the field."); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 826–27 (D. Minn. 2011) (holding that although an "expert does not necessarily have to conduct quantitative testing," they must have "identifiable factual bases" for their opinions, not simply conclusory statements).

Dr. Hitt's opinions regarding Dr. Krosnick's survey are not based on any independent survey, study, or evidence. He opines that Dr. Krosnick's survey does not determine a diminution in market value, but rather a change in willingness to pay, because it does not take into account the supply side of the market. *See* Ex. 1, ¶¶30-37 (opining that willingness

to pay and market value are not the same, and that using willingness to pay overstates damages), ¶¶61-73 (opining that Dr. Krosnick's survey does not take supply side factors into consideration). However, Dr. Hitt did not do any work to determine whether including the supply side factors he believes are necessary would affect the diminution in value results Dr. Krosnick found. *See* Hitt Dep. 63:15-17 ("Q: In this case, you did not design any survey to support your opinions; correct? A: That's correct."), 77:1-5 ("Q: So you don't know whether the results of using that methodology [that incorporates supply-side] would be any different than what Dr. Krosnick found in his survey? A: No .…"), 133:11-18 ("Q: And have you calculated the supply curve for the products at issue in the but-for world in this case? A: No, I have not attempted to propose a full structural supply-and-demand model.").

Dr. Hitt also opines that Dr. Krosnick's survey does not follow an "established methodology" for determining diminution in value attributable to a product feature. Ex. 1, ¶¶39-42. Of course, as discussed above, he is simply unqualified to offer such an opinion, and moreover, he has no evidence that using a different methodology would lead to a different result because he did not design or conduct a survey of his own. *See* Hitt Dep. 63:15-17. But even if he was qualified, he did not design and conduct a hedonic regression, a random utility-discrete choice modeling framework, or a conjoint analysis. *Id.* at 95:13-96:6. Thus, this opinion about Dr. Krosnick's methodology is not based on any evidence. Rather, it is simply an observation that Dr. Krosnick's survey allegedly does not fall into one of the categories of surveys Dr. Hitt believes would be appropriate.

Dr. Hitt's opinion that Dr. Krosnick's survey "has no resemblance to the actual retail environment" suffers from this flaw as well, and is rife with conclusory statements that are not supported by evidence or any independent work showing that this alleged "flaw" had any impact on Dr. Krosnick's survey. Ex. 1, ¶¶43-48. For example, Dr. Hitt states that Dr. Krosnick's survey did not represent the market because consumers have multiple products available to purchase, but Dr. Hitt testified that this opinion is solely based on "my own personal observation as well as sort of general characteristics of retail environments." Hitt

Dep. at 111:7-18. Similarly, Dr. Hitt opines that, unlike in Dr. Krosnick's survey, consumers may receive information from retail sales representatives or online reviews, Ex. 1, ¶45, but then testifying that this opinion is based on "a general characteristic of consumer behavior," not any survey or study he conducted or referenced regarding the pet food market. Hitt Dep. at 113:8-22. With respect to these opinions, Dr. Hitt acknowledged "without doing another survey, you can't tell" whether the result would be different if the issues he identifies were addressed. *Id.* at 119:20-120:3. This cannot possibly meet the FRE 702 and *Daubert* reliability requirement. *See Guidroz-Brault*, 254 F.3d at 830.

Expert opinions based on general principles without any study or testing tying those principals to the facts of the case do not meet the reliability requirement of FRE 702 and *Daubert*. Dr. Hitt's opinions regarding Dr. Krosnick's survey are simply speculative and would thus not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). These opinions should be excluded.

**D.     Dr. Hitt's Opinions Regarding Dr. Krosnick's Survey Are Duplicative of Dr. Hanssens's Opinions**

Under FRE 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... wasting time, or needlessly presenting cumulative evidence." Dr. Hitt offers opinions that are duplicative of CPF's survey expert, Dr. Hanssens, who has significantly more experience than Dr. Hitt in designing and conducting surveys to value consumer product attributes. Dr. Hanssens was retained by CPF to "review and evaluate Dr. Krosnick's report and survey instrument." Ex. 3, ¶10 (Hanssens May 13 Report). CPF intends to offer Dr. Hanssens to opine about Dr. Krosnick's survey design, including the fact that he only included two CPF products, that his survey cannot determine a change in market price but rather only willingness to pay, that Dr. Krosnick's survey did not replicate the real world purchasing conditions, and that Dr. Krosnick's analysis of his data used the wrong methodology, among other opinions. *See generally id*.

Many of Dr. Hitt's opinions related to Dr. Krosnick's Damages Survey either overlap with or are identical to these opinions offered by Dr. Hanssens. Dr. Hitt opines that Dr. Krosnick's survey measures willingness to pay rather than market value. *See* Ex. 1, ¶¶30-35 ("Dr. Krosnick's definition [of value] is equivalent to the definition of *willingness to pay* generally used in economics and documented in introductory textbooks.") (emphasis in original). Dr. Hanssens offers an identical opinion. Ex. 3, ¶¶ 9-47 ("the 'value' concept Dr. Krosnick tries to estimate is therefore nothing more than the maximum price an individual would be willing to pay when deciding whether to purchase a product—which is the precise definition of willingness to pay in academic literature."). Dr. Hitt opines that Dr. Krosnick's Damages Survey is unreliable because it "has no resemblance to the actual retail environment that consumers face when making purchasing decisions" because consumers generally have multiple product choices and can ask a retail representative for information or get more information from online sources. Ex. 1, ¶¶43-48. He also opines that the dog food market is a "differentiated product market" because of the number of products available to consumers, a diversity of consumer preferences for product attributes, and the different information consumers have access to when purchasing dog food. *Id.* at ¶¶74-84. Dr. Hanssens offers a nearly identical opinion. Ex. 3, ¶¶104-122 (describing the dog food market in terms of pricing, the variety of products available to consumers, and the type of information consumers have available to them when purchasing dog food).

Dr. Hitt opines that Dr. Krosnick's survey design cannot find a diminution in market value because it did not properly take supply-side factors into consideration. Ex. 1, ¶¶61-73 ("the analysis performed by Dr. Krosnick is solely a demand-side analysis and does not take into account any supply-side factors"). Dr. Hanssens offers an identical opinion. Ex. 3, ¶43 ("Dr. Krosnick's [Diminution in Value S]urvey is not equipped to incorporate any supply-side factors.").

As such, in addition to the fact that Dr. Hitt is not qualified to offer these opinions, these opinions from Dr. Hitt are cumulative of opinions from Dr. Hanssens and should be excluded under FRE 403.

# **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Dr. Hitt be prohibited from offering any opinions as to Dr. Krosnick's survey.

Dated: October 28, 2019                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                           */s/ Rebecca Peterson*
                                           REBECCA A. PETERSON

                                           ROBERT K. SHELQUIST
                                           REBECCA A. PETERSON (241858)
                                           KRISTA FREIER (*pro hac vice*)
                                           100 Washington Avenue South, Suite 2200
                                           Minneapolis, MN 55401
                                           Telephone: (612) 339-6900
                                           Facsimile: (612) 339-0981
                                           E-mail: rkshelquist@locklaw.com
                                                   rapeterson@locklaw.com
                                                   kkfreier@locklaw.com

                                           ROBBINS ARROYO LLP
                                           KEVIN A. SEELY (199982)
                                           STEVEN M. MCKANY (271405)
                                           5040 Shoreham Place
                                           San Diego, CA 92122
                                           Telephone: (619) 525-3990
                                           Facsimile: (619) 525-3991
                                           E-mail: kseely@robbinsarroyo.com
                                                   smckany@robbinsarroyo.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
KARLA M. GLUEK
RAINA C. BORRELLI (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
rborrelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
BRENDAN S. THOMPSON (*pro hac vice*)
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com
brendant@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
scruzhodge@litedepalma.com

LITE DEPALMA GREENBERG, LLC
STEVEN J. GREENFOGEL (*pro hac vice*)
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: (267) 519-8306
Facsimile: (973) 623-0858
E-mail: sgreenfogel@litedeplama.com

- 13 -

ANDREWS DEVALERIO LLP
Daryl D. Andrews (*pro hac vice*)
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
E-mail: daryl@andrewsdevalerio.com

POMERANTZ LLP
Gustavo F. Bruckner (*pro hac vice*)
Samuel J. Adams (*pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
E-mail: sjadams@pomlaw.com
        gfbruckner@pomlaw.com

STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
E-mail: conrad@stephensfirm.com

**Attorneys for Plaintiffs**