**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **JENNIFER REITMAN, et al.,** | **Case No.: CV 18-1736-DOC (JPRx)** |
|     **Plaintiffs,** | |
| | |
|     **vs.** | **ORDER DENYING MOTION FOR CLASS CERTIFICATION [178]** |
| **CHAMPION PETFOODS USA, INC., et al.** | |
|     **Defendants.** | |

Before the Court is Plaintiffs' Motion for Class Certification ("Motion") (Dkt. 178). For the reasons stated below, the Court **DENIES** Plaintiffs' Motion.

## I.    Background

These facts are taken from the Third Amended Complaint ("TAC") (Dkt. 157). This lawsuit is a consumer class action brought by Plaintiffs Jennifer Reitman, Carol Shoaff, and Erin Grant individually and on behalf of a class of similarly situated individuals (collectively, "Plaintiffs") against Defendants Champion Petfoods USA, Inc. and Champions Petfoods LP (collectively, "CPF" or "Defendants"). Plaintiffs allege injury as a result of Defendants' negligent, reckless, or intentional practice of misrepresenting and failing to fully disclose the heavy metals, pentobarbital, toxins, Bisphenol A ("BPA"), non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements Defendants made throughout the United States. TAC ¶ 1.

### A.    Facts

Defendants sell Dog Food[1] under the brand names Acana and Orijen throughout the United States. TAC ¶ 2. Defendants have created a niche in the Dog Food market by making biologically appropriate Dog Food with natural ingredients. *Id*. ¶ 3. They then charge a premium for this purportedly higher-quality food. *Id*. Defendants' packaging and labels further emphasize fresh, quality, and properly sourced ingredients. *Id*. ¶ 5. Defendants made a variety of statements regarding the benefits of the Dog Food. For example, Defendants stated their Dog Food is free of any heavy metals and/or chemicals like BPA by having assured the foods represent an evolutionary diet that mirrors that of a wolf–free of anything "nature did not intend for your dog to eat." *Id*. ¶¶ 7–9.

Nowhere in the labeling, advertising, statements, warranties and/or packaging do Defendants disclose that the Dog Foods contain levels of arsenic, mercury, lead, cadmium and/or BPA, which are known to pose health risks to humans and animals, including dogs. *Id*. ¶ 6. Based on the risks associated with exposure to higher levels of arsenic, both the Environmental Protection Agency ("EPA") and Food and Drug Administration ("FDA") have

---

[1] The term "Dog Food" as used in this opinion refers to the 23 different "formulas" of Defendants' Acana and Orijen dog foods at issue found at ¶ 62 of the TAC.

set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA). *Id*. ¶ 15. The FDA is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb. *Id*. ¶ 16. The Dog Foods also contain lead, mercury, and cadmium, which can cause various health problems. *Id*. ¶¶ 17–20.

Plaintiffs also allege Defendants were knowingly, recklessly, and/or negligently selling certain of the contaminated foods from DogStar kitchens containing pentobarbital. *Id*. ¶ 11. This renders any statement that ingredients are biologically appropriate false. *Id*. Finally, Defendants also allegedly misled consumers by marketing that their dog food is made from fresh and regional ingredients and is never outsourced. *Id*. ¶ 12–13. In fact, Defendants source ingredients internationally and throughout the United States. *Id*.

Despite the known risks of exposure to these heavy metals and toxins, Defendants have negligently, recklessly, and/or knowingly sold the Dog Foods without disclosing they contain levels of arsenic, mercury, cadmium, lead, and pentobarbital to consumers like Plaintiffs. *Id*. ¶ 21, 40. Defendants have wrongfully and misleadingly advertised and sold the Dog Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur. *Id*. ¶ 23, 30. Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public. *Id*. ¶ 24, 40. This is true especially in light of the long-standing campaign by Defendants to market the Dog Foods as healthy and safe to induce consumers, such as Plaintiffs, to purchase the products. *Id*.

Plaintiffs seek certification of the following class: "All persons residing in of the State of California who purchased the Dog Food from July 1, 2014 to the present." Mot. at 2. Plaintiffs also request certification for the following subclass ("the Pentobarbital Subclass"): "All persons residing in the State of California who purchased [JBS USA Holdings, Inc.] JBS Dog Foods between January 2016 and December 2018." *Id*.

### B.  Named Plaintiffs

Plaintiffs are individuals from California. TAC ¶ 55–57. Each Plaintiff purchased various formulas of Defendants' Dog Food for their dogs. *Id*. Each Plaintiff alleges reliance on material misstatements and omissions on the packaging. *Id*.

### 1.  Jennifer Reitman

Jennifer Reitman ("Reitman") purchased Orijen Six Fish with New England Mackerel, Herring, Flounder, Redfish, Monkfish, and Silver Hake Dry Dog Food; Acana Singles Lamb and Apple Formula Dry Dog Food; Acana Singles Duck and Pear Formula Dry Dog Food; and Acana Regionals Grasslands with Grass-Fed Kentucky Lamb, Freshwater Trout, and Game Bird Dry Dog Food between January 2012 and July 2016. *Id*. ¶ 55. Plaintiff Reitman was unaware of the chemicals and toxins found in the dog foods and would not have purchased the foods if fully disclosed. *Id*.

### 2.  Carol Shoaff

Carol Shoaff ("Shoaff") purchased Acana Singles Lamb and Apple Kibble and Orijen products from 2013 to April 2018. *Id*. ¶ 56. Plaintiff Shoaff was unaware of the chemicals and toxins found in the dog foods and would not have purchased the foods if fully disclosed. *Id*.

### 3.  Erin Grant

Erin Grant ("Grant") purchased Orijen Regional Red; Acana Regionals Grasslands with Grass-fed Kentucky Lamb, Freshwater Trout and Game Bird; Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats and Freshwater Catfish; Orijen Adult Dog Food; and Orijen Puppy Large Dry Dog Food from February 2011 to January 6, 2019. *Id*. ¶ 57. Plaintiff Grant was unaware of the chemicals and toxins found in the dog foods and would not have purchased the foods if fully disclosed. *Id*.

### C.  Procedural History

Plaintiffs assert state-law claims on behalf of the class: (1) violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§1750, *et seq*.; (2) violations of California False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq*.; (3) violations of the Unfair Competition Law ("UCL"), California Business &

Professions Code §§ 17200, *et seq*.; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) fraudulent misrepresentation; (7) fraud by omission; (8) negligent misrepresentation; and (9) unjust enrichment. TAC ¶¶ 134–208.

Plaintiffs filed the instant Motion on August 29, 2019 (Dkt. 178). Defendants filed their opposition ("Opp'n") on September 30, 2019 (Dkt. 187). Plaintiffs filed their reply October 14, 2019 (Dkt. 212).

## II.  Legal Standard

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Rule 23(a) requires Plaintiffs to show the following: (1) the class is so "numerous" that joinder of all members individually is impracticable; (2) there are questions of law or fact "common" to the class; (3) the claims or defenses of the class representatives are "typical" of the claims or defenses of the class; and (4) the person representing the class is able to fairly and "adequately" protect the interests of all class members. Fed. R. Civ. P. 23(a). These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th Cir. 2010).

After satisfying these four prerequisites, a party must also demonstrate compliance with one of the requirements under Rule 23(b). Here, because Plaintiffs seek certification under Rule 23(b)(3) they must demonstrate that common "questions of law or fact" predominate over questions affecting individual members and that a class action is a superior method "for fairly and efficiently adjudicating" the action. Fed. R. Civ. P. 23(b)(3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). A party seeking class certification must affirmatively demonstrate compliance with Rule 23–that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties and common questions of law or fact. *Id.*

In resolving a class certification motion, it is inevitable that the Court will touch on the merits of a plaintiff's claims. *See Wal-Mart,* 131 S. Ct. at 2551–52 ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's causes of action.") (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982)). But, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194–95 (2013). Accordingly, any merits consideration must be limited to those issues necessary to deciding class certification. *See id.* at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "[W]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question of whether common questions exist." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

## III.   Discussion

Plaintiffs seek to certify the following Class and Subclass:

*Class*: All persons residing in of the State of California who purchased the Dog Food from July 1, 2014 to the present.

*Pentobarbital Subclass*: All persons residing in the State of California who purchased JBS Dog Foods between January 2016 and December 2018.

Mot. at 11.

In their Motion, Plaintiffs alternatively argue that the Class be certified with respect to the following issues, pursuant to Rule 23(c)(4):

a) Are the "Biologically Appropriate," "Fresh Regional Ingredients," and "Never Outsourced." ("BAFRINO") and/or Natural representations misleading?

b) Are the BAFRINO and/or Natural representations material?

c) Did Champion Petfoods USA, Inc. and Champion Petfoods LP. ("CPF") know the BAFRINO and/or Natural representations were false?

d) Did CPF conceal that the Dog Food contained heavy metals and/or BPA, were at risk of containing pentobarbital, and/or that any of the BAFRINO or Natural representations were false?

e) Would a buyer be expected to rely on the following information in deciding whether to purchase the Dog Food:

      i. The existence of heavy metals and/or the risk of inclusion of BPA and/or pentobarbital;

      ii. CPF's use of expired, frozen, and reground ingredients;

      iii. CPF's sourcing of ingredients both internationally and outside the geographic region of its kitchens; and

      iv. CPF's failure to adequately audit and/or inspect its suppliers.

f) Are the BAFRINO and Natural misrepresentations, and/or CPF's concealment of the risk of heavy metals, BPA, and/or pentobarbital, likely to deceive a reasonable consumer?

g) Were CPF's misrepresentations regarding, and its, concealment of the use of expired, frozen, and reground ingredients likely to deceive reasonable consumer?

h) Were CPF's misrepresentations regarding, and its concealment of, the sourcing of ingredients both internationally and outside the geographic region of its kitchens likely to deceive a reasonable consumer?

i) Were CPF's misrepresentations regarding the known risk of pentobarbital from using JBS to manufacture tallow and meal likely to deceive a reasonable consumer?

j) Did CPF's misrepresentations have the capacity to deceive?

k) Did CPF have a duty to disclose that the Dog Food has a risk of containing heavy metals, BPA, and pentobarbital and/or that the foods did not meet the BAFRINO or Natural promises?

l) Did CPF breach the express warranties created by the BAFRINO o Natural promises?

m) Does the Dog Food conform to the promises and affirmations of fact CPF made on the label?

n) Is CPF liable for punitive damages based on its active concealment of the risk of heavy metals and/or inclusion or risk of pentobarbital in the Dog Food?

Mot. at 2–4.

Under Federal Rule of Civil Procedure 23(c)(4), "[when] appropriate, an action may be brought or maintained as a class action with respect to particular issues." Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are treated as a class under this rule." As the Ninth Circuit has made clear, "each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

**A. Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs have alleged that the CPF's total sales in California during the class period is approximately $350 million dollars. Mot. at 12. Defendants do not dispute the Class satisfies the numerosity requirement. Opp'n at 28 n.18. However, Defendants do dispute whether the Subclass is sufficiently numerous. *Id.* Defendants argue that "it is entirely speculative as to whether any California consumer purchased [Dog Food] that contained the

affected JBS" ingredients. *Id*. Plaintiffs reply by arguing that "[s]ales of JBS Dog Food in California totaled $19,813,838.79 during the Class Period, making numerosity self-evident." Reply at 20 n.28.

"A proposed class of at least forty members presumptively satisfies the numerosity requirement [of Rule 23(a)(1)]." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011). Further, where "'general knowledge and common sense indicate [a class size] is large,'" numerosity is met. *In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04-CV-01226 DOC (JTLx), 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006).

Here, the Court finds that numerosity is met. Where total sales of the Dog Food at issue is approximately $350 million dollars and total sales of the JBS Dog Food purchased by the Subclass is over $19 million dollars, common sense indicates numerosity is met. *See In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04-CV-01226 DOC (JTLx), 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006). Defendants' argument that the number of people who bought contaminated JBS Dog Food is only speculative is not an argument as to the *numerosity* at the proposed subclass but rather points out a potential proof issue for the Plaintiff.

### B. Commonality

Plaintiffs generally argue that their claims rise and fall on the truth or falsity of CPF's promises—namely, whether Defendants' products were marketed using misrepresentations and whether these misrepresentations were material . . ." Mot. at 14 (quotations omitted). Plaintiffs present several common issues that they allege will be resolved by this action, including:

(1) Whether the BAFRINO and/or Natural representations misleading;

(2) Whether the BAFRINO and/or Natural representations material;

(3) Whether the BAFRINO and Natural misrepresentations, and/or CPF's concealment of the risk of heavy metals, BPA, and/or pentobarbital, likely to deceive a reasonable consumer; and

(4) Whether the Dog Food conform to the promises and affirmations of fact CPF made on the label.

Mot. at 13–14.

Plaintiffs also propose several other allegedly common questions of law and fact in their Motion. *Id.*

Defendants assert that there are "numerous fact-specific individualized questions implicated by Plaintiffs' liability theories [that] do not yield common answers." Opp'n at 29. Plaintiffs respond by arguing Defendants' blanket assertion that the common questions do not yield common answers in this case is not sufficient to seriously contest commonality here. *See* Reply at 19.

Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class," but "even a single common question will do." *See Wal-Mart*, 131 S. Ct. at 2551, 2556 (citations and quotations omitted); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Certification is appropriate where the legality of a particular policy presents a "significant question of law" that is "apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc.*, 731 F.3d 952, 963 (9th Cir. 2013) (citing *Wal-Mart*, 131 S. Ct. at 2551).

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis*, 657 F.3d at 981. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Id.*

Here, the Court finds that commonality is satisfied. Plaintiff has identified several common questions as to both the Class and Subclass that are capable of generating common answers. *See Wal-Mart*, 564 U.S. at 350. For example, Plaintiff has raised the question of whether the contention that the Dog Food is "biologically appropriate" is materially misleading as to the Class. That question may be capable of a common answer as to the entire Class. Next, as to the Subclass, Plaintiff has identified the question whether "CPF's misrepresentations regarding the known risk of pentobarbital from using JBS to manufacture tallow and meal likely

to deceive a reasonable consumer?" This question is also capable of a common answer as to the entire Subclass.

Because of the presence of some questions that are susceptible to common proof and the common core of factual allegations, the Court finds that Rule 23(a)(2) is satisfied.

### C. Typicality and Adequacy

Plaintiffs argue that they satisfy both the typicality and adequacy requirements because their "claims and resulting injuries stem from CPF's identical BAFRINO and Natural representations and CPF's material omissions." Mot. at 15. Furthermore, Plaintiffs argue that their "interests are aligned with those of the Class members because they have all been harmed by the same common misconduct and seek the same relief." Mot. at 15–16.

Defendants counter that "[b]ecause the representations on Champion's packaging varied depending on the brand, diet, the kitchen where the diet was produced, and the time period in which is was made, none of the Plaintiffs can be said to be 'typical' for the entire proposed class." Opp'n at 28. Furthermore, for the Subclass, Defendants argue that Plaintiffs Shoaff and Reitman did not purchase "Red diet" Dog Food and therefore cannot be typical of the Subclass when only red diet dog food was affected by pentobarbital. *Id.* Finally, Defendants argue that because Plaintiffs cannot satisfy typicality they cannot satisfy adequacy. Mot. at 29.

Plaintiffs counter by arguing that the BAFRINO promise is on every bag purchased by the Class, including the Dog Food purchased by the Plaintiffs. Reply at 19. The fact that other statements were also included on the Dog Food packaging is irrelevant when all Plaintiffs saw the overarching BAFRINO promise. *Id.* at 19–20. Finally, through Reitman and Shoaff did not purchase "Red diet" Dog Food, Plaintiff Grant did. *See* Compl. ¶ 57.

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts assess typicality by determining whether the class representatives and the rest of the putative class have similar injuries and conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth Circuit has stated "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* at 508. The "test of typicality is 'whether other

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citing *Schwartz v. Harp*, 105 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

A class representative must also be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The Court concludes that Plaintiffs meet both the typicality and adequacy requirements of Rule 23(a). Here, Plaintiffs are typical of the Class because, as Plaintiffs allege, the entire class was subject to some representations that are present on all of the Dog Foods at issue (such as the "biologically appropriate" representation). Thus, Defendants' alleged misconduct is not unique to the named Plaintiffs, instead "other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508. Finally, because Defendants do not challenge adequacy independent of typicality, the Court finds that Plaintiffs and Plaintiffs counsel are adequate.

## IV.    Class Certification Under Rule 23(b)

Once Plaintiffs have satisfied the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Because the Court has concluded Plaintiffs satisfied the prerequisites of Rule 23(a), the Court now turns to Rule 23(b). Specifically, Plaintiffs invoke Rule 23(b)(3), under which common questions of law or fact must predominate and the class device must offer a superior means of resolving the dispute.[2] The Court must also consider whether Plaintiffs have shown that damages can be feasibly and efficiently measured.

---

[2] Plaintiffs alternatively rely on Rule 23(b)(2) and Rule 23(c)(4), but the Court first discusses certification under Rule 23(b)(3).

## A.  Predominance

When certification is sought for a litigation class, the predominance inquiry under Rule 23(b)(3) asks whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[.]" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "The predominance criterion is far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). Yet "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Petersen v. Costco Wholesale Co.,* 312 F.R.D. 565, 579 (C.D. Cal. 2016).

The party seeking class certification has the burden of establishing predominance. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (citation omitted). Further, plaintiffs must show that "'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (citing *Comcast v. Corp. v. Behrend*, 569 U.S. 34 (2013)).

The Court will analyze whether common questions predominate as to each group of Plaintiffs' claims in turn.

### 1.    UCL, FAL, and CLRA Claims

Plaintiffs argue the core elements of the UCL, FAL, and CLRA claims all rely on the common answer to the question of "whether members of the public are likely to be deceived by the BAFRINO and Natural representations." Mot. at 17–18. This is because the elements of

these claims do not require the court to investigate class members individual reactions to the product. Mot. at 18. Instead, the test is objective: Whether a reasonable person would consider the representation or omission material. Mot. at 17; *see also Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable . . . Each statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation."). Essentially, Plaintiffs argue that the heart of these statutory claims "is whether CPF made uniform misrepresentations on, and omissions from, its packaging." Mot. at 19. *That* determination, and whether the representations and omissions were material or would deceive a reasonable person, may be determined on a class-wide basis.

Defendants argue that common issues do not predominate because "Plaintiffs cannot show that members of the class were exposed to the same misrepresentations or any omissions." Opp'n at 8–9. Defendants contend that Plaintiffs' focus on CPF's BAFRINO and Natural statements is an artificial simplification because each package of Dog Food has variations of the statements and give context to the general terms at issue. Opp'n at 9–10. For example, Defendant's argue that the phrase "fresh" requires context from the surrounding explanation that differs from bag to bag. Opp'n at 10. For one bag, the term may mean the particular formula contains particular ingredients that are "fresh or raw." *Id*. For another formula the term may not have the same descriptor. *Id*.

Defendants argue that the general statements challenged by the Plaintiffs must also be compared to the *contents* inside each particular formula of dog food. Opp'n at 14. For example, Defendants contend that determining whether the term "fresh" is misleading will necessitate "a diet-by-diet analysis." Opp'n at 14. Similarly, because the term "regional" is inherently relative, the fact finder will have to determine whether each particular formula was actually sourced close to the kitchen at issue. *Id*. Overall, Defendants argue that the context that is particular to each separate formula is "significant and material, making it impossible for Plaintiffs to promulgate sweeping characterizations about any particular statements' applicability across the

putative class at large." Opp'n at 11. And unlike cases where this Court has granted certification, here the proposed class was not subject to the *same* alleged misrepresentations because each Champion diet is unique such that the representations require individual determinations. Opp'n at 15.

Plaintiffs respond by arguing that the misrepresentations are uniform because the common message is BAFRINO and is found on all packages. *See* Report of Dr. Jon A. Krosnick, Dkt. 178-3 at 36–42. Second, Plaintiffs argue that their claims have nothing to do with the unique characteristic of each Dog Food formula, but instead the misrepresentation of the overarching BAFRINO message. Reply at 5. Finally, Plaintiffs argue that minor variations between the packages of Dog Food do not change the fact that every bag promotes the BAFRINO message and other statements that differ on each bag do not defeat predominance. Reply at 5–6.

California's UCL, "FAL and CLRA rely on the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 532 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)); *see also Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1022 (9th Cir. 2011) (holding that, under CLRA, "[c]ausation, on a classwide basis, may be established by *materiality,*" meaning that "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class"). This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate "class members' individual interaction with the product." *Bruno,* 280 F.R.D. at 535 (C.D. Cal. 2011); *Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1125 (C.D. Cal. 2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA."). For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL. *See e.g., Keegan v. Am. Honda Motor Co., Inc.,* 284 F.R.D. 504 (certifying "a California UCL/CLRA class of purchasers" of vehicles); *Bruno v. Eckhart Corp.,* 280 F.R.D. 540, 547 (C.D. Cal. 2012) (denying reconsideration of nationwide

class certified under California's UCL, FAL, and CLRA and noting that "[d]istrict courts routinely apply the ... California Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) ... to nationwide classes").

However, "[c]lass certification in a UCL, FAL, and CLRA case is inappropriate where Plaintiffs cannot show that members of the class were exposed to the same misrepresentations or any omissions, for example, through a long-term advertising campaign . . . ." *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("A presumption of reliance does not arise when class members were exposed to quite disparate information from various representatives of the defendant.") (internal quotations omitted).

Here, the Court finds that common questions of law or fact do not predominate the action. As a preliminary matter, the Court finds that Plaintiffs are not entitled to a presumption of reliance because "Plaintiffs cannot show that members of the class were exposed to the same misrepresentations." *See Mazza*, 666 F.3d 581, 596 (9th Cir. 2012). Though the Court agrees with Plaintiffs that Defendants may have a common message—BAFRINO—found in all Dog Food packages, Defendants point to numerous issues requiring individualized attention that would predominate over any common questions. For example, Defendants show the Court that the phrases at issue require context that differs from bag to bag. *See, e.g.,* Opp'n at 10 (describing why "biologically appropriate" differs from bag to bag as several bags define the phrase differently); *Id*. at 10–11 (describing why "fresh" differs from bag to bag because different bags identify what ingredients are "fresh" for that particular formula); *Id*. at 11 (describing how some bags do not describe the main ingredients as "regional" but instead describes them at "local" and specifically identifies the source of certain ingredients).[3]

Plaintiff argues that any differences in statements on Dog Food packaging are minor and do not defeat predominance. *See* Reply at 5–6. Plaintiff cites *Combe v. Intermark Communications Inc*. for the proposition that minor variations in representations are not fatal to class certification. *Combe v. Intermark Commc'ns, Inc*., No. CV0909127SJOPJWX, 2010 WL

---

[3] The Court acknowledges Plaintiff's argument that all bags contain the word Regional (Reply at 5 n.6), but that still does not dispose of the fact that some bags also contain the word "local" and describe where certain ingredients come from. Both of these differences give context to the word "regional" and must be analyzed bag by bag.

11597517, at *8 (C.D. Cal. Nov. 18, 2010) (finding that "minor variations" that do not affect the "center of gravity" of a claim do not defeat predominance). However, in *Combe* the representations included only "innocuous variations" such as different background colors or different stock pictures placed with the representation. *Id*. Here, however, the variations go to the very heart of Plaintiffs' claims: Whether a reasonable person is deceived by the BAFRINO message. That question will necessarily require individualized inquiry into the specific formula at issue because each formula is unique and has different representations on the packaging that give context to the overall BAFRINO message. *See* Opp'n at 12.

Defendants cite *In Re Tropicana Orange Juice Mktg. and Sales Practice Litig.*, No. 2:11-07382, 2019 WL 2521958 (D.N.J. June 18, 2019) to argue that "class treatment is not appropriate under California law when the advertising statements at issue varied." *Id*. Plaintiffs in *Tropicana* moved to certify a class of consumers of orange juice based on alleged misrepresentations in marketing that the juice was "100% pure and natural," "100% pure," "100% orange juice," "pasteurized orange juice," "pasteurized," "pure," "natural," "fresh," and "grove to glass." *Id*. at *9. Defendants in *Tropicana* argued that the products included "different labels and packaging" and included different terms such as "fresh," "natural," and "pure." *Id*. at *8. Plaintiffs argued that minor variations in labeling were immaterial because the "core messaging was always the same: [the juice] is 100% pure." *Id*. at *9. The Court denied class certification finding that the terms at issue "sometimes appeared on individual packaging, and sometimes did not" and that at times the product "[was] not marketed as 100% pure orange juice with nothing added to it." *Id*. at *9–10. Therefore, "the Court would be required to perform an individualized inquiry into each product purchased to determine what combinations of labels were visible before determining whether that combination is deceiving to a reasonable consumer. These variations are the poster child for lack of predominance." *Id*. at *10.

Here, the misrepresentations at issue are similarly subject to variations depending on the formula purchased by the proposed class member. As described above, every package differed and provided context to the overall BAFRINO message. *See* Opp'n at 10–11. Indeed, as in *Tropicana*, Plaintiffs here argue that the variations are immaterial and do not change CPF's

core BAFRINO messaging. However, that argument does not hold when the changes would require this Court to "determine what combinations of labels were visible before determining whether that combination is deceiving to a reasonable consumer." *Tropicana*, No. 2:11-07382, 2019 WL 2521958 at *10.

Even through every package contains the phrase "biologically appropriate," "never outsourced" and "fresh regional ingredients," reply at 5, every package also differs in providing additional statements that give context to the overall theme such that an individualized determination must be made bag by bag to determine whether a reasonable customer would be deceived. *See* Opp'n at 13 ("[O]ne must first look on the outside of the packaging to determine how ingredients are described, and then compare those descriptions to the ingredients inside the bag to determine whether there was a misrepresentation). In essence, though certain phrases may be found on every package, each package's labeling provides additional context that will require individualized analysis across Class members that predominate over any common questions. Therefore, Plaintiffs do not meet Rule 23(b)(3) predominance requirements as to their UCL, FAL, and CLRA claims.

### 2. Remaining Claims

The Plaintiffs remaining claims for Breach of Express Warranty, Breach of Implied Warranty, Fraudulent Misrepresentation, Negligent Misrepresentation, and Fraud by Omission also fail because of the lack of uniformity in the misrepresentations across the Class. *See supra* section IV.A.1. Each of these causes of action require analysis of the representations made to the Class. *See* Mot. at 20–24. However, as described above, the Court finds that the overall BAFRINO message may differ from bag to bag given the context provided on the labeling of each formula of Dog Food. Because uniform misrepresentations are lacking, and individualized bag to bag inquiry would be required to adjudicate these claims, the Court finds that the Plaintiffs do not meet Rule 23(b)(3) predominance requirements as to their remaining claims.

### 3. Other Potential Subclasses

At oral argument regarding the instant Motion, plaintiffs' counsel asked the Court to consider granting leave for plaintiffs to propose subclasses that would meet the predominance

requirement. However, the Court finds that granting leave to propose additional subclasses would be futile because the analysis would still require bag-by-bag determinations that would predominate over common questions to the class. Therefore, the Court rejects plaintiffs' request to propose further subclasses.

### B. Damages

Though the Court finds a lack of predominance as to the proposed Class, the Court will continue its analysis of whether damages can be feasibly calculated.

In order to satisfy the Rule 23(b)(3) predominance requirement, Plaintiffs must present a damages model that demonstrates that damages can be reliably calculated on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). *Comcast* instructs:

> [A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3). Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a "plaintiff's damages case must be consistent with its liability case."

*Id.* (citations omitted).

At the class certification stage, "Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *JustFilm, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017).

Plaintiffs put forward evidence supporting a "price premium theory for the Class and a full-refund theory for the Pentobarbital Subclass." Mot. at 25. The Court addresses each damages calculation in turn, ultimately holding that Plaintiffs cannot meet their burden to show a proper damages model for the Class or Subclass. This provides an independent basis to deny the instant Motion.

### 1.    Price Premium Calculation

Plaintiffs proffer a price premium damages model to calculate damages for the Class. Plaintiffs expert Dr. Krosnick conducted a survey to determine whether the alleged misrepresentations are material and whether correcting the misrepresentation would have decreased the value of the purchased Dog Food. Mot. at 9. The expert surveyed 6,728 adults in the United States. *Id*. at 10. The expert showed the surveyed population pictures of the labeling and then showed "corrective statements" involving the alleged misrepresentations. *Id*. The corrective statements were:

- Laboratory testing has shown there is a risk that this food may contain mercury. The World Health Organization has said that in humans, "Mercury may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes."

- Laboratory testing has shown there is a risk that this food may contain cadmium. A federal public health agency of the U.S. Department of Health and Human Services, has found, "Kidney and bone effects have also been observed in laboratory animals ingesting cadmium. Anemia, liver disease, and nerve or brain damage have been observed in animals eating or drinking cadmium."

- Laboratory testing has shown there is a risk that this food may contain lead. The Food & Drug Administration has said, "Lead is poisonous to humans and can affect people of any age or health status."

- Laboratory testing has shown there is a risk that this food may contain arsenic. The Environmental Protection Agency has said, "Arsenic has been linked to a number of cancers. These include cancer of the bladder, lungs, skin, kidney, nasal passages, liver, and prostate."

- Laboratory testing has shown there is a risk that this food may contain BPA. The Food & Drug Administration has said, "BPA is an industrial chemical used to make polycarbonate, a hard, clear plastic, which is used in many consumer products."

- The manufacturer of this food has stated that it may include ingredients that are not are delivered to them fresh but have been frozen before they are used to make the dog food.
- The manufacturer of this food has stated that it may include ingredients that are sourced outside the region where it is manufactured. This may include not only other regions within the United States but also other regions internationally.
- The manufacturer of this food has stated that it uses third parties to process and manufacture protein meals and tallows used in its dog foods.

Mot. at Exh. 1, pp. 42–43.

The respondents were randomly selected to view zero to eight of the statements. Mot. at 10. The results showed that the value of the Dog Food decreased with each additional piece of corrective information shown. *Id*.

Defendants argue that the expert report does not provide a proper method of calculating damages on a class-wide basis. Opp'n at 23. Defendants argue that the theory of Plaintiffs' case is that there are alleged misrepresentations on Defendants' Dog Food packaging that create a price premium. *Id*. However, the expert survey only tested the effects of *new* statements authored by the Plaintiffs and did not measure the effect of the statements on the bag. *Id*. at 23–24. Defendants argue that a proper analysis would have tested consumers reaction to the bag with and without the alleged misrepresentations. *Id*. at 24.

Defendants also argue that the corrective statements do not align with Plaintiffs omission theory of liability. *Id*. at 24–25. The corrective statements tied to the omission claims begin by stating "[l]aboratory testing has shown there is a risk that this food may contain [ingredient]." Then the statement goes on to provide additional facts regarding the effect of the ingredient on humans or pets. *Id*. at 24 n.15. For example, the statement pertaining to lead states "[l]ead is poisonous to humans and can affect people of any age or health status." Defendants argue these statements do not give any context as to the dosage or exposure that may create the effects described in the statements. *Id*. at 24–25. Furthermore, the statements only "test the impact of

the statements drafted by Plaintiffs' lawyers that would never appear on Champion bags." *Id*. at 24. Therefore, the corrective statements do not adequately tie to Plaintiffs' omission theory.

Next, Defendants argue that the corrective statements fail for two other reasons: (1) The survey does not provide any way to "distinguish the impact attributable to any individual corrective statement" and (2) the calculation is "based on only consumers' willingness to pay . . . but ignores supply-side factors such as Champion's willingness to sell, production costs, and competitor reactions." *Id*. at 25–26. Defendants argue that if one or more theories of liability are eliminated, then the survey cannot calculate damages applicable only to the prevailing theories. This is because the survey did not isolate the impact on price for a particular statement or a particular combination of statements. *Id*. Instead, the survey simply found that the greater the number of corrective statements the greater the decrease in value.

Plaintiffs respond that their damages calculation is "based on the theory that the BAFRINO claims are false or misleading and that CPF failed to disclose to Plaintiffs and the Class the true nature and quality of the Dog Food." Reply at 20. To this end, "the eight corrective statements . . . test how information correcting each of CPF's BAFRINO statements or material omissions affect consumers' perception of the value of the Dog Food." *Id*. Plaintiffs dispute Defendants characterization of the survey as not adequately testing the impact of their misrepresentations or omissions because "the corrective statements effectively tested the decrease in consumers' value of CPF's Dog Food when its various misrepresentations and omissions are corrected." *Id.* at 22.

Next, Plaintiffs dispute that the corrective statements do not adequately track their omission theory. Plaintiffs argue that the survey contains "factually accurate information quoted directly from government sources . . . or obtained through discovery in this action." *Id*. The statements thus create a "but-for" world where the only thing that changes is the consumer being told the truth about the product. *Id*. Finally, Plaintiffs argue that the survey *does* show the diminution in value attributable to each corrective statement and any number of corrective statements in combination or isolation. *Id.* at 21–22. However, the deposition cited states the opposite. *See* Deposition of Jon A. Krosnick, Dkt. 195–1, 6:15–20 (describing how the expert

provided *no* analysis to determine whether a combination of factors may have a different

impact).

"The proper measure of restitution in a mislabeling case is the amount necessary to

compensate the purchaser for the difference between a product as labeled and the product as

received." *In re NJOY, Inc. Consumer Class Action Litig*., 120 F.Supp.3d 1050, 1118 (C.D.

Cal. 2015) (citing *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL

2191901, *22 (N.D. Cal. May 23, 2014)). After producing evidence that attaches a dollar value

to the goods received by the consumer, restitution can "be determined by taking the difference

between the market price actually paid by consumers and the true market price that reflects the

impact of the unlawful, unfair, or fraudulent business practices." *Id*. Plaintiffs must therefore

present a damages model that can determine the price premium attributable to Defendants' use

of the challenged statements. *Id*.

The Court finds that Plaintiffs' proposed damages model that uses eight corrective

statements to determine the diminution in value of the Dog Foods at issue does not meet the

*Comcast* requirements because the model tests the effects of the newly created statements on

the consumers and *not* the effect that the alleged misrepresentations found on the packaging had

on the consumers. The kind of model that Plaintiffs have created is not one "that can determine

the price premium attributable to [Defendants'] use of misleading statements." *In re NJOY,

Inc.,* 120 F.Supp.3d at 1118. Instead it determines the difference in consumer expectation based

on corrective statements that the Plaintiffs created—some of which would not pertain to all of

the Dog Food at issue.[4] Furthermore, the model does not test whether the corrective statements

have a different impact on consumers in particular combinations. Therefore, if any theory of

liability is disposed of, the survey does not provide a reliable way to determine the difference in

value based on the remaining theories of liability because the expert did not test the impact of

particular combinations of statements. For these reasons, Plaintiffs have not "show[n] that such

---

[4] For example, Defendants point the Court to the fact that the "corrective statement" that fixes the alleged "regional"
misrepresentation cannot pertain to the NorthStar formula because the NorthStar formula states on the package that it was
manufactured in Canada. Opp'n at 25 n.16. Therefore, the statement cannot be corrective as to that formula.

damages can be determined without excessive difficulty and attributed to their theory of liability." *JustFilm*, 847 F.3d at 1121.[5]

### 2.      Full Refund Model

Defendants argue that Plaintiffs cannot rely on a full refund theory for the Pentobarbital Subclass because a full refund methodology "would give those class members who purchased [potentially affected food] a full refund merely because such [food] had a *risk* of containing pentobarbital." Opp'n at 27. However, Defendants argue that Plaintiffs (1) provide no evidence that a risk of contamination renders the product totally valueless and (2) provide no evidence of any value decrease based on the fact that the Dog Food *might* have contained pentobarbital. *Id*. Plaintiffs dispute that the full refund theory fails as to the Pentobarbital Subclass because the theory for that class is that it is unlawful to sell adulterated food, and because there was a risk of contamination, a full refund is appropriate. Reply at 23.

The Court agrees with Defendants that the full refund theory is inappropriate where, as here, there are inevitably potential class members that did not purchase JBS Dog Food with contaminants. Even assuming *arguendo* that Class members who purchased Dog Food contaminated with pentobarbital should receive a full refund, it does not follow that class members subjected to a *risk* of contamination should receive a full refund. Therefore, the full refund model fails as to the Pentobarbital Subclass.

### V.      Alternative Rule 23(b)(2) or Rule 23(c)(4) Class

Plaintiff argues in the alternative for certification under Rule 23(b)(2) or Rule 23(c)(4). Mot. at 28–30. The Court finds the request to certify under Rule 23(b)(2) is inappropriate because Plaintiffs have not shown that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *McVicar*, 2015 WL 4945730 at *15. Instead, as described *supra*, the alleged misrepresentations differ across bags of Dog Food and an injunction "to prohibit the future sale of adulterated and misbranded dog food" is not appropriate. Mot. at 29.

---

[5] The Court also notes that, even if Plaintiffs were granted leave to propose additional subclasses, those subclasses would face a similar damages issue if Plaintiffs utilized the same expert report as utilized here.

The Court now turns to Rule 23(c)(4). "Courts have applied subdivision (c)(4)(A) to allow a partial class action to go forward, leaving questions of reliance, damages, and other issues to be adjudicated on an individual basis." 7A Wright & Miller, *Federal Practice and Procedure: Civil* §1790 (3d ed). Plaintiffs ask this Court grant certification as to liability for "any and all claims." Mot. at 28. Defendants argue the issues Plaintiffs request certification for, including "whether CPT . . . made material misrepresentations and omissions," require "individualized questions about which . . . [formulas] each particular class member purchased, which statements(s) the class member saw, and whether that statement is misleading in light of" other contextual factors. Opp'n at 29.

Federal Rule of Civil Procedure 23(c)(4) states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." F.R.C.P. 23(c)(4). The Ninth Circuit has approved the use of issue classes where certification under Rule 23(b)(3) is not proper because common questions do not predominate. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court finds that certifying a class under Rule 23(c)(4) is inappropriate where, as here, there are numerous individualized issues affecting determinations of liability. *See supra* section IV.A. Though predominance need not be met to be certified under Rule 23(c)(4), the Court finds that the numerous individualized issues that would come up with certifying even a liability only class would be inefficient. Therefore, the Court declines to certify any class under Rule 23(c)(4).

## VI.    Disposition

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Class Certification.


DATED:  October 30, 2019


*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE